UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRENDA C.,[1]<br><br> *Plaintiff*,<br><br>v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br> *Defendant*. | No. 3:21-cv-01650 (MPS) |

**RULING ON PENDING MOTIONS**

 In this social security benefits case, the Administrative Law Judge ("ALJ") found that Plaintiff, Brenda C., was not disabled under the Social Security Act ("SSA") from November 30, 2015, through February 1, 2020, the date the ALJ determined Plaintiff became disabled, and therefore denied benefits for this period. Plaintiff appeals the Commissioner's denial of benefits, arguing that (1) the ALJ erred by failing to consider at step four of the sequential analysis whether Plaintiff's past relevant work was a composite job; (2) the ALJ's residual functional capacity ("RFC") finding for the period prior to February 1, 2020 was not supported by substantial evidence in the record; and (3) the ALJ erred in his discussion of certain opinion evidence. Because I find that the ALJ's decision was supported by substantial evidence and free of the legal errors claimed by Plaintiff, I grant the Commissioner's motion to affirm the decision (ECF No. 14) and deny Plaintiff's motion to reverse (ECF No. 12).

 **I. BACKGROUND**

---

[1] As set forth in the January 8, 2021 Standing Order, the Plaintiff is identified by her first name and last initial. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01, (D. Conn. Jan. 8, 2021).

1

I assume familiarity with Plaintiff's medical history, as summarized in her statement of facts, ECF No. 12-2, which the Commissioner incorporates and supplements, ECF No. 14-1, and which I adopt and incorporate by reference. I also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.[2] I cite only those portions of the record and the legal standards necessary to explain the ruling.

## II.   STANDARD OF REVIEW

The Court "may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence' - that is, if no reasonable factfinder could have reached the same conclusion as the ALJ." *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022).

> The substantial evidence standard is a very deferential standard of review — even more so than the clearly erroneous standard . . . Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn . . . If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld . . . The substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*

*Id.* at 74 (internal quotation marks and citations omitted, emphasis in original); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted) ("Substantial evidence" means "more than a mere scintilla").

## III.   DISCUSSION

As noted, Plaintiff challenges the ALJ's decision on three grounds, arguing that the ALJ: (1) "issued a Step Four denial[] finding that [Plaintiff] can return to work that is not her past relevant work;" (2) "composed an incomplete Residual Functional Capacity (RFC) description

---

[2] Citations to the administrative record, ECF No. 8, appear as "R." followed by the page number appearing in the bottom right-hand corner of the record.

lacking significant relevant factors;" and (3) "did not provide supportable rationale for his RFC description for the relevant period." ECF No. 12-1 at 2-3. The nature of Plaintiff's second and third challenges as set forth in her brief is unclear. As best I can discern, Plaintiff's second argument, which is not articulated in any detail and which the Commissioner does not respond to, appears to assert that the ALJ did not specify what parts, if any, of the opinions by the state agency consultants he relied on and also improperly declined to rely on an opinion by Plaintiff's treating physician that she was disabled. Her third argument, which the Commissioner does address, appears to assert that the ALJ's RFC determination was not supported by substantial evidence. I begin with Plaintiff's third argument, which addresses the ALJ's RFC determination, then move to her second, which addresses aspects of the opinion evidence, and end with Plaintiff's first argument, which concerns the ALJ's step four denial.

    **A. Substantial Evidence**

"Before [the ALJ moves] from step three to step four, [he] assess[es] [plaintiff's] residual functional capacity [("RFC")]…." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A plaintiff's RFC is "the most [she] can still do despite [her] limitations" and is determined "based on all the relevant evidence in [the] case record," namely, "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Stated differently, "an individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citation and internal quotation marks omitted). I "must affirm an ALJ's RFC determination when it is supported by substantial evidence in the record." *Barry v. Colvin*, 606 Fed. App'x 621, 622 n.1 (2d Cir. 2015) (summary order) (citations omitted).

Here, the ALJ separated his RFC determination into two periods. For the period between November 30, 2015, Plaintiff's alleged onset date of disability, and February 1, 2020, the date the ALJ determined Plaintiff became disabled—the period at issue in this case—the ALJ found that Plaintiff had the following RFC:

> [T]he [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] was able to stand/walk for four hours and sit for six hours. She required a sit/stand option as follows: sit for 30 minutes, alternate to standing position for one to two minutes, then resume sitting. She should have never climbed ladders, ropes, or scaffolds. The claimant was limited to occasionally climb stairs and ramps, balance, stoop, and crouch. She should have never kneel or crawl [*sic*]. She was limited to frequently handle and finger. She should have avoided work in exposure to cold.

R. 20.[3] "[B]eginning on February 1, 2020," however, the ALJ found that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)," with the following additional limitations:

> [Plaintiff] requires a sit/stand option as follows: sit for 30 minutes, alternate to standing position for five minutes and then resume sitting. She should never climb ladders, ropes or scaffolds. She should never climb stairs. She is limited to occasionally climb ramps, balance, stoop, and crouch. She should never kneel or crawl. She is limited to frequently handle and finger. She should avoid work in exposure to cold.

R. 23.[4]

Plaintiff first contends that based on the evidence in the record, the ALJ should have found the post-February 2020 RFC for the relevant period, i.e., for the period beginning on November 2015, as well. *See* ECF No. 12-1 at 10-12. But I find that substantial evidence in the record supports the ALJ's RFC determinations.

---

[3] "Light work generally requires 'a good deal of walking or standing,' 20 C.F.R. § 404.1567(b), 'for a total of approximately 6 hours of an 8-hour workday.'" *Michaels v. Colvin*, 621 F. App'x 35, 40 (2d Cir. 2015) (summary order) (quoting Titles II & XVI: Determining Capability to Do Other Work—The Med.-Vocational Rules of Appendix 2, SSR 83–10, 1983 WL 31251, at *6 (1983)).

[4] "In contrast to light work, sedentary work primarily 'involves sitting, [with] a certain amount of [occasional] walking and standing.' [20 C.F.R.] § 404.1567(a)." *Michaels v. Colvin*, 621 F. App'x 35, 40 (2d Cir. 2015) (summary order).

Plaintiff points to evidence in the record of her obesity. The ALJ noted, however, that although Plaintiff was obese and that he considered the potential impact of her obesity, "there is no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning," R 20, a finding Plaintiff does not specifically challenge except to note that at one internal medicine visit in August 2017, she had "shortness of breath." ECF No. 12-1 at 12.[5] And the ALJ took note when her body mass index increased significantly as of February 2020, and factored it into his determination to find her disabled beginning at that time. R. 27. Further, the record of the August 2017 visit does not attribute Plaintiff's shortness of breath to obesity, suggesting instead that it stemmed from her "cough" and her "[n]eed[ for] albuterol." R. 470. The same medical record also indicates that Plaintiff had "normal range of motion, normal strength" and "normal gait," and that she was in "[g]enerally good health" with "no outstanding medical issues." R. 472-73. And while that medical record does say that Plaintiff exercises for only 15 minutes once or twice a week, it does not suggest, as Plaintiff argues in her brief, that she "was limited to" such infrequent, light exercise. R. 472; ECF No. 12-1 at 12.

Plaintiff also points to her knee pain. ECF No. 12-1 at 12. But the ALJ considered the evidence in the record regarding both her knee and her back pain, finding that for the period before February 1, 2020, hospital and medical visits showed normal strength, normal range of motion, normal motor function, and normal gait. R. 21-22. This determination was supported by substantial evidence in the record. *See, e.g.*, R. 296 (October 2015 records noting "[m]otor strength is 5 out of 5 throughout," and "[g]ait is stable"); R. 365 (December 2015 records noting that Plaintiff had "normal strength bilaterally, 5/5 strength" and "normal" gait and station, and that she was "general[ly] able to do usual activities"); R. 369 (January 2016 examination noting

---

[5] The plaintiff cites page 472 of the Record for this assertion, but I could not find any reference to shortness of breath on that page. There is such a reference – from the same visit – on page 470.

"[n]ormal range of motion, [n]ormal strength,…[n]ormal gait"); R 496, 498-499, 501 (March and April 2016 records noting Plaintiff's "[n]umbness, 'twitching' on side of face comes and goes but is generally better," and "has improved," and that Plaintiff had a "[n]ormal range of motion, [n]ormal strength,…[n]ormal gait"); R. 492, 494 (May 2016 examination noting Plaintiff "presents with back pain" exacerbated by "lying flat, " but the severity of the pain is "mild" and "is improving"; and noting Plaintiff's "[n]ormal range of motion, [n]ormal strength,…[n]ormal gait" as well as "good ROM [range of motion] lower back"); R. 442, 444 (September 2018 "Annual Physical" noting Plaintiff was "feel[ing] generally ok" and "[d]oing well []off meds."). The ALJ thus had ample grounds to conclude:

> For the period prior to February 1, 2020, the medical records do not show any strength deficits taking [Plaintiff] out of the scope of the residual functional capacity.  The finding for normal strength and range of motion militate against [Plaintiff's] allegations of reduced stand/walk ability.

R. 22. [6]

While Plaintiff's hearing testimony suggested that her conditions were more debilitating than the ALJ determined, the ALJ did not find that testimony entirely credible.  R 21 ("[f]or the period prior to February 1, 2020, …these allegations…underestimate her functional abilities" given the medical record evidence from this period.").   The ALJ was not, of course, required to accept that testimony where it conflicted with objective medical evidence in the record. *See, e.g., Wendy C.v. Kijakazi*, 2023 WL 2569402 *4 (D. Conn. Mar. 20, 2023) ("[T]he ALJ is not required to blindly accept the subjective testimony of a claimant when examining the issue of pain.  Rather, an ALJ has the discretion to evaluate a claimant's subjective testimony and arrive

---

[6] The ALJ's review of Plaintiff's medical evidence for this period ended in 2018 because, as the Commissioner notes, "[t]he record shows only one other visit in 2019 for an abscess that was drained." ECF No. 14-2 at 6 (citing R. 618-20.  Plaintiff does not point the Court to any other medical evidence for the period between September 2018 and February 2020.

at an independent judgment ... in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." (internal quotation marks and citation omitted)).

Finally, although Plaintiff argues that the ALJ should have found for the period before February 1, 2020, that Plaintiff had the same RFC he determined for the period beginning on that date, ECF No. 12-1 at 11-12, I find that substantial evidence also supports the ALJ's determination that Plaintiff's condition substantially worsened in 2020. *See* R. 23 (ALJ noting increase in Plaintiff's BMI and increasing problems with knee and stating that "[g]iven the increase in her BMI, the [ALJ] can credit that she had very limited stand/walk ability and decreased ability to climb stairs"); R. 622 (record of February 5, 2020 visit noting BMI of 71.9 – higher than the BMI Plaintiff's brief describes in the earlier period, ECF No. 12-1 at 12); R. 628 (record of June 8, 2020 visit stating that "[l]ower back and knee pain is probably worse …. She is unable to walk or stand for more than a few minutes without severe pain. She [has] become unable to assist with [or] take part in her [activities of daily living]").

In short, I find that the ALJ's RFC determinations were supported by substantial evidence in the record.

**B.     Opinion Evidence**

Plaintiff also argues that "[t]he ALJ found that the opinions of [the] State Agency are 'partially persuasive' (Tr. 23) but he did not say what he relied on to compose [Plaintiff's] RFC description for the relevant period (2015-2017)," ECF No. 12-1 at 13, and that the ALJ should have adopted the opinion of her treating physician, set forth in a February 5, 2020 visit record, that Plaintiff was "currently totally disabled for any kind of gainful employment." ECF No. 12-1 at 13 (quoting R. 595).

*State Agency Opinions*

With regard to Plaintiff's argument about the opinions of the State Agency consultants, I note that she does *not* argue that the ALJ failed to consider those opinions using the factors required by the applicable regulations (which the ALJ described in his opinion (R. 22)), and so I do not address any such argument. Rather, Plaintiff seems to be arguing that the ALJ failed to specify which portions, if any, of those opinions he relied on to compose the RFC for the earlier period.

The ALJ found the opinions of "the State agency consultants at the … initial and reconsideration levels" to be "partially persuasive," noting that they had not "examine[d] [Plaintiff], but [did] review[] the medical evidence of record." R. 22. It is apparent from a comparison of the RFCs determined by the ALJ and those determined by the state agency consultants that the ALJ found that Plaintiff was more restricted than they did, as he imposed alternating sit/stand requirements and limitations in both RFCs in addition to those they assigned and found even more limited functional capacity beginning February 1, 2020. Specifically, as noted, the ALJ found that prior to February 1, 2020, Plaintiff could perform light work "except [Plaintiff] was able to stand/walk for four hours and sit for six hours," with "some stand/walk limits and that she required a sit/stand option" involving alternating between sitting and standing (with mostly sitting) every 30 minutes plus additional restrictions R. 21, and further found that on February 1, 2020, Plaintiff could perform only sedentary work with "a sit/stand option as follows: sit for 30 minutes, alternate to standing position for five minutes and then resume sitting" plus additional restrictions. R. 23. The state agency consultants at the initial and reconsideration levels found that Plaintiff was less restricted for the entire period from November 30, 2015 to the date of their determinations, i.e., that she could perform light work/sedentary work with the following restrictions: At the initial level, the state agency found

that Plaintiff had a "Light RFC that is eroded to Sedentary due to restrictions for stand/walking of 4 hours a day" R. 74 but without additional restrictions; *see also* R. 88 (same), and finding that Plaintiff could sit for "[a]bout 6 hours in an 8-hour workday." R. 69-71; *see also* R. 83-85 (same). At the reconsideration level, the state agency determined that Plaintiff could stand and/or walk for a total of 4 hours, could sit for "[m]ore than 6 hours on a sustained basis in an 8 hour workday….," and could perform her past relevant work. R. 96-97; R. 102-103 (same).

Admittedly, the ALJ could have been clearer about which portions of the state agency opinions, if any, he was relying on in making the determination for the pre-February 2020 period, although he was clear that he rejected the state agency opinions "for the favorable period beginning on February 1, 2020," noting that the "[t]he claimant's later records show an increase in weight, problems with her stand/walk, and limited activities of daily living." R. 23. But I do not find that remand is warranted on this basis. First, for the pre-February 2020 period, it is readily apparent that the ALJ largely agreed with the state agency consultants' assessment of the medical records and, for that earlier period, assigned a similar RFC, except that he found the need for a more precise delineation of restrictions around her sitting and standing limitations – including a time period for alternating between standing and sitting in his RFC – as well as the need for other activity restrictions. *See Cichocki*, 729 F.3d at 178 n.3 (2d Cir. 2013) ("[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [a court] to glean the rationale of an ALJ's decision." (internal quotation marks omitted)); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) ("[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."). Second, there would be substantial evidence – in particular, the ample evidence discussed above showing largely normal examinations for the pre-February 2020

9

period – to support the ALJ's determination for that period even without the state agency consultants' opinions. *Monroe v. Commissioner of Social Security*, 676 Fed. Appx. 5, 8 (2d Cir. Jan. 8, 2017) ("Where … the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (internal quotation marks, citation, and alteration omitted)). Here, as noted, the records from the pre-February 2020 period include consistent findings of normal, strength, range of motion, motor function, and gait, and notations that Plaintiff was in "[g]enerally good health" with "no outstanding medical issues," R. 472-73, "general[ly] able to do usual activities," R. 365, and "feel[ing] generally ok," R. 442. Third, the State agency opinions are less favorable to Plaintiff than the ALJ's opinion, and so Plaintiff was not prejudiced by his failure to adopt them in their entirety. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Remand is unnecessary … where application of the correct legal standard could lead to only one conclusion.").

*Disability Opinion*

Plaintiff also challenges the ALJ's failure to adopt the opinion of her physician:

> [Her] long-time treating physician Dr. Daniel McNichol noted on February 5, 2020 that 'she's currently totally disabled for any kind of gainful employment as a result of her obesity, shortness of breath, and arthritis in her back' (Tr. 595), but the ALJ adopted this opinion only from that month onward, without seeking clarification from the treating source, whether this limitation applied in the pre-December 31, 2017 period.

ECF No. 12-1 at 13.[7] But as the Commissioner notes, "[a] statement on the issue of whether Plaintiff is disabled is an issue reserved to the Commissioner." ECF No. 14-2 at 8. "Statements

---

[7] The "pre-December 31, 2017 period" refers to Plaintiff's "Date Last Insured." *See* R. 17 ("With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2017. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits."). "[T]o obtain [disability insurance benefits,] the claimant must have become disabled between the alleged [disability] onset date and the date on which she was last insured." *Rodriguez v. Berryhill*, 2019

10

that [Plaintiff] [is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work" are "neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), (c)(3)(i). For evidence of this kind, the ALJ "will not provide any analysis about how [he] considered such evidence in [his] determination or decision…." 20 C.F.R. § 404.1520b(c). The ALJ made the same point in his opinion. R. 22 (noting that although evidence on "issues reserved to the Commissioner" "may be present in the record," he did "not address[] it in this decision" because he was not required to do so). So the ALJ did not err in declining to "adopt" Dr. McNichol's statement that Plaintiff was disabled.

## C. Step Four: Past Relevant Work

Step four of the analysis requires an ALJ to assess whether, given the claimant's RFC, the claimant "can do [her] past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "If [plaintiff] can still do [her] past relevant work, [the ALJ] will find that [plaintiff is] not disabled." *Id.*

At step four, the ALJ determined, based on Plaintiff's RFC and the testimony of a vocational expert, that "[p]rior to February 1, 2020, [Plaintiff] was capable of performing past relevant work as an Outreach Worker," but that "[b]eginning on February 1, 2020, [Plaintiff's] residual functional capacity has prevented [her] from being able to perform past relevant work." R. 24. Plaintiff argues that the ALJ erred in concluding she was capable of performing her past work as an outreach worker prior to February 1, 2020 because he failed to consider whether her past relevant work was a composite job[8] involving the work of both an "outreach worker" *and* a

---

WL 3741029, at *7 (S.D.N.Y. May 22, 2019), *report and recommendation adopted*, 2019 WL 5158721 (S.D.N.Y. Oct. 15, 2019).

[8] "A composite job is one that 'ha[s] significant elements of two or more occupations and, as such, ha[s] no counterpart in the DOT.' SSR 82-61, at *2; *see also Long v. Berryhill*, No. 16-CV-760S, 2018 WL 618119, at *4 (W.D.N.Y. Jan. 30, 2018). In its Program Operations Manual System ("POMS"), the SSA elaborates, 'The claimant's PRW [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant.' *See* Social Security Administration, Program Operations

"child monitor."[9]  *See* ECF No. 12-1 at 7-10.  "Had the ALJ properly classified [her] past work," Plaintiff argues, "she would have been found disabled."  ECF No. 12-1 at 10.  I disagree.

To start with, the Plaintiff has waived this argument.  It was Plaintiff's counsel herself, who continues to represent Plaintiff on appeal and who sought to classify Plaintiff's past work solely as that of an outreach worker before the ALJ, going so far as to identify the job by its DOT code in her opening statement at the hearing.  Counsel stated the following at the hearing:

> Now, the state agency limited [Plaintiff] to less than light exertion and, ultimately, made a finding for -- called sedentary work.  She should have been approved benefits at that point except, I believe, that they missed -- misunderstood her past job.  So they had her down as a program manager, which is an SVP 8, sedentary job.  And although her job was called outreach program manager, it's actually more akin to community worker or Social Security -- I'm sorry -- DOT 195.367-018, which is more of an outreach type job as she was doing instead of, you know, managing a lot of people, which [is] what the program manager job contemplates.

R. 36-37.  Now, however, for the first time Plaintiff argues that "[t]he job of Outreach Worker [only] *partly* describes [Plaintiff's] past work…."  ECF No. 12-1 at 8 (emphasis added).  According to Plaintiff, outreach worker "is not really the job that [Plaintiff] performed.  Her[] [job] was a composite job between Outreach Worker and Child Monitor at DOT 301.677-010."  *Id.*  Plaintiff cannot sandbag the Commissioner by pressing an argument before the ALJ only to attack the ALJ's adoption of the argument as error in this Court.  *See, e.g.*, *Rodriguez v. Berryhill*, 2019 WL 3741029, at *13 (S.D.N.Y. May 22, 2019), *report and recommendation*

---

Manual System (POMS), DI 25005.020 Past Relevant Work (PRW) as the Claimant Performed It ("POMS DI 25005.020"), available at https://s044a90.ssa.gov/apps10/poms.nsf/lnx/0425005020.  POMS also specifies that, if the SSA determines that the past relevant work was a composite job, it must explain why.  *Id.*"  *Delgado v. Berryhill*, 2018 WL 1316198, at *17 (D. Conn. Mar. 14, 2018).

[9] A "Child Monitor" is described in the DOT as follows: "Performs any combination of following duties to attend children in private home: Observes and monitors play activities or amuses children by reading to or playing games with them.  Prepares and serves meals or formulas.  Sterilizes bottles and other equipment used for feeding infants.  Dresses or assists children to dress and bathe.  Accompanies children on walks or other outings.  Washes and irons clothing.  Keeps children's quarters clean and tidy.  Cleans other parts of home.  May be designated Nurse, Infants' (domestic ser.) when in charge of infants.  May be designated Baby Sitter (domestic ser.) when employed on daily or hourly basis."  301.677-010 Child Monitor, DICOT 301.677-010.

*adopted*, 2019 WL 5158721 (S.D.N.Y. Oct. 15, 2019) (collecting cases recognizing that a failure to raise an issue before the ALJ waives the right to raise it on appeal, "especially…where, as here, a plaintiff is represented by counsel during her administrative hearing.").

In addition, even if there was no waiver, the record does not support Plaintiff's new argument. Plaintiff's testimony before the ALJ, which described her past relevant work as involving "oversee[ing] about 12 staff," "go[ing] out in the community recruiting," contacting "the Department of Family and Children" on suspicion of "neglect or abuse," and conducting "home visits with the families that [Plaintiff's organization] served," R. 39-41, was, as the Commissioner notes, consistent with the DOT description of an outreach worker, ECF No. 14-2 at 10-11.[10] Granted, Plaintiff also testified "to helping out with classroom tasks and when teachers were absent," ECF No. 14-2 at 11, explaining that she occasionally "[c]arr[ied] things, like, helping out with the classroom, getting food up to them in the classroom – carrying food trays;" that sometimes she "would have to help lift a child getting to the table or change a diaper;" that when "teachers called out," she would have to shut the outreach office down and "go into the classroom and help that other teacher out;" and that she "had a few classes that [she] would oversee." R. 40-42. But Plaintiff's counsel did not question Plaintiff about these additional duties or otherwise submit any evidence that these duties were a significant

---

[10] A "Community Worker" is described in the DOT as follows: "Investigates problems of assigned community and of individuals disadvantaged because of income, age, or other economic or personal handicaps to determine needs: Seeks out, interviews, and assists persons in need of agency services, under direction of professional staff, or refers persons to specific agencies for service. Visits individuals and families in their homes to explain supportive services and resources available to persons needing special assistance. Speaks before neighborhood groups to establish communication and rapport between persons in community and agency, to publicize supportive services available, and to assist in resolving problems facing community concerning housing, urban renewal, education, welfare, unemployment insurance, and crime prevention. Follows up all contacts and prepares and submits reports of activities. May maintain files and records of work activities to provide access to and retrieval of data. May work for police department for purpose of establishing communication between citizens and police officials to promote understanding of functions, purpose, and goals of police in community and assists in resolution of community problems." 195.367-018 Community Worker, DICOT 195.367-018.

component of her past work.  *See* R. 48-52; *see also* SSR 82-61 (noting that "composite jobs have *significant elements* of two or more occupations" (emphasis added)); Social Security Administration, Program Operations Manual System, DI 25005.020 ("The claimant's [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the *main duties* of the [past relevant work] as described by the claimant." (emphasis added)).[11]

Consistent with Plaintiff's counsel's opening statement, the vocational expert testified that Plaintiff's past relevant work was properly classified as follows: "outreach worker," "DOT code … of 195.367-018.  That is an SVP of 6 and light duty per DOT.  It sounds, possibly, up to medium as performed …." R. 53.  This testimony was based on "testimony from [Plaintiff] regarding her past work" and other information provided to the expert regarding Plaintiff's past work. R. 53.  The ALJ afforded Plaintiff's counsel the opportunity to question the vocational expert following the expert's testimony, but counsel did not ask a single question about alternative classifications for Plaintiff's past work or whether Plaintiff's past work was a composite job, R. 57-58.  Based on the testimony of the vocational expert, the ALJ classified Plaintiff's past relevant work as an outreach worker, using the same DOT code identified by Plaintiff's counsel and the vocational expert. R. 24.  Specifically, the ALJ adopted the following description of Plaintiff's past work from the vocational expert:

> Outreach Worker, DOT, 195.367-018, generally performed as light exertional work pursuant to the DOT, but actually performed as medium exertional work by the claimant, skilled, SVP 6.

---

[11] The Second Circuit has "held that POMS guidelines are entitled to substantial deference and will not be disturbed as long as they are reasonable and consistent with the statute."  *Lopes v. Dep't of Social Services*, 696 F.3d 180, 186 (2d Cir. 2012) (internal quotation marks omitted).

R. 24. And the ALJ concluded that given Plaintiff's RFC, she was "able to perform this past relevant work as actually performed [during the period prior to February 1, 2020] based on the testimony of the vocational expert." R. 24.

While courts in this Circuit have remanded cases for further factfinding as to whether a claimant's past work was a composite job where there is some indication in the record that the ALJ ignored, or failed to further develop, evidence suggesting a claimant's job was a composite job, *see, e.g.*, *Delgado v. Berryhill*, 2018 WL 1316198, at *18-19 (D. Conn. Mar. 14, 2018) (instructing the ALJ to consider on remand, "because the case is already being remanded for other reasons," whether claimant's relevant past work was a composite job in light of "evidence appear[ing] to indicate at least the possibility that" it was); *Walterich v. Comm'r of Soc. Sec.*, 2020 WL 2078795, at *6 (W.D.N.Y. Apr. 30, 2020) ("Plaintiff's testimony, as well as [other evidence], at the very least created a possibility that his past work was a composite one…. However, despite questioning Plaintiff about his [additional] duties, both the VE and the ALJ ignored any such possibility in their analysis and, as a result, failed to determine whether Plaintiff's past relevant work was a composite job."); this is not such a case.

For one thing, the vocational expert "did not testify that Plaintiff's past relevant work, as Plaintiff actually performed it or as it was generally performed, was a composite job." *Noelle v. Comm'r of Soc. Sec.*, 2017 WL 9509957, at *7 (N.D.N.Y. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 945094 (N.D.N.Y. Mar. 10, 2017). Neither did Plaintiff "question the VE's testimony during the hearing, [or]…argue at the hearing that her past work…was a composite job." *Id.* As in *Noelle*, "Plaintiff failed to show her past relevant work was composite work …." *Id.* at *8.

15

For these reasons, I find that the ALJ did not err in concluding that Plaintiff's past relevant work was properly classified as an outreach worker.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Reverse (ECF No. 12) is DENIED and the Commissioner's Motion to Affirm the Decision (ECF No. 14) is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

                                              /s/
                                    Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
              March 31, 2023